UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD B. ACORD,

      Plaintiff,                      Civil Action No. 13-12059

v.                                 HON.  MARK A. GOLDSMITH
                                 U.S. District Judge
                                 HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Richard B. Acord brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under Title II of the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

      On February 17, 2009, Plaintiff filed an application for Disability Insurance Benefits

("DIB"), alleging an onset date of November 28, 2007[1] (Tr. 147).  After the initial denial of the claim, Plaintiff timely requested an administrative hearing, held on March 31, 2011 in Phoenix, Arizona (Tr. 31).  Administrative Law Judge ("ALJ") Philip E. Moulaison presided (Tr. 31).  Plaintiff, represented by attorney Kavanaugh, testified (Tr. 35-45), as did vocational expert ("VE") Sandra Richter (Tr. 46-50).  On April 29, 2011, ALJ Moulaison found that Plaintiff was capable of performing his past relevant work as a production worker and a salesperson (Tr. 24-25).  On May 29, 2012, the Appeals Council denied review (Tr. 2-7).  On July 18, 2013, the Appeals Council extended the time in which Plaintiff could file a civil action (Tr. 1).  Plaintiff filed suit in this Court on May 9, 2013.

## BACKGROUND FACTS

Plaintiff, born February 13, 1962, was 49 at the time of the administrative decision. (Tr. 25, 147).  He attended four or more years of college (Tr. 181) and worked previously as a production manager and sales manager (Tr. 177, 212-215).  Plaintiff's application for benefits alleges disability as a result of joint dysfunction, degenerative disc disease, and "sacrum disorders" (Tr. 176).

### A.   Plaintiff's Testimony

*Plaintiff's counsel prefaced his client's testimony by amending the alleged onset of disability date to June 11, 2008* (Tr. 35).

---

[1]Plaintiff's later request to amend the alleged onset of disability date to June 11, 2008 was granted (Tr. 16).

Plaintiff then offered the following testimony:

He was divorced with two minor children (Tr. 35-36).  He stood 6' 5" and weighed 180 pounds (Tr. 36).  He lived in a single-family home he used primarily as "investment" property (Tr. 36).  He held a valid driver's license and drove three days a week (Tr. 36).  He held a Bachelor's degree (Tr. 36).  He stopped working in November, 2007 due to his physical inability to perform his job (Tr. 37).  He received a Workers' Compensation settlement, but had no current income (Tr. 37).

Plaintiff last worked as a production manager (Tr. 37).  He also worked as a sales manager and plant manager (Tr. 37).  His inability to work stemmed primarily from lower back pain (Tr. 37).  He underwent back surgery twice and additionally received ablation treatment, "several steroid injections," TENS unit treatment, and hot and cold packs (Tr. 38). He had also been treated for skin cancer (basal cell) (Tr. 38-39).  He received treatment from a primary care physician and a "pain management doctor" (Tr. 39).  He currently took morphine and Oxycodone for back pain (Tr. 40).

He was unable to walk for more than 100 yards at a time (Tr. 40).  He needed to move "very slowly" when climbing one flight of stairs (Tr. 40).  He could stand for up to 15 minutes and sit up to 30 (Tr. 41).  He was unable to lift more than 10 pounds (Tr. 41). Lifting more than 10 pounds caused "generalized" back pain (Tr. 41).  He was able to stoop and bend with varying degrees of difficulty (Tr. 42).  He experienced difficulty kneeling and squatting  (Tr. 42).  His back pain, centered at S1, varied in intensity (Tr. 42).  His right leg

-3-

was continually numb (Tr. 42). He coped with pain by changing position (Tr. 43). He had

not slept in a bed for five years due to his inability to find a comfortable position (Tr. 43).

In response to questioning by his attorney, Plaintiff stated that he was first diagnosed

with skin cancer one year earlier (Tr. 43). He attributed the condition to sun exposure and

a genetic predisposition (Tr. 43). In addition to generalized, low grade pain and lower

extremity numbness, Plaintiff experienced episodes of knife-like pain (Tr. 44). He coped

with the generalized pain by lying down and elevating his legs, adding that reclining did not

alleviate the knife-like pain (Tr. 44).

### B.    Medical Evidence[2]

### 1.    Treating Sources

In June, 2005, Plaintiff, diagnosed with degenerative disc disease, underwent an

interbody spinal fusion at L5-S1 after sustaining injuries in an August, 2003 auto accident

(Tr. 278-288). He underwent a laminectomy in August, 2006 (Tr. 269). In February, 2007,

Daniel J. Sullivan, M.D. opined that Plaintiff was unable to drive for more than two hours

at a time (Tr. 265). In September, 2008, Jeff Dare, D.O. found that Plaintiff could sit for up

to two hours in an eight-hour workday and walk for four and stand for four (Tr. 296). He

found that Plaintiff could lift or carry up to 50 pounds occasionally and 25 frequently but was

unable to use foot controls (Tr. 296). Dr. Dare restated the same restrictions in December,

---

[2]Records predating the alleged June 11, 2008 onset date are included for
background purposes.

2008 (Tr. 297).  He noted that Plaintiff controlled back pain with the use of over-the-counter medicine (Tr. 331).  Dr. Dare's  March, 2009 records state that Plaintiff requested "something for pain," stating that Vicodin "worked well in the past" (Tr. 330).  Dr. Dare prescribed Tramadol (Tr. 329).  Dr. Dare found that Plaintiff could lift up to 50 pounds occasionally and 25 frequently (Tr. 397).  The next month, Plaintiff reported that both Tramadol and traction were "ineffective" (Tr. 328).  Dr. Dare prescribed Vicodin (Tr. 327).  Later the same month, Plaintiff reported that steroid injections, TENS unit treatment, and chiropractic treatment had been ineffective (Tr. 326).  He reported good results from Lyrica (Tr. 326).  The following month, Plaintiff reported "good pain management" (Tr. 322).  He stated that Cymbalta improved his mood and "prevent[ed] him from getting depressed from the pain" (Tr. 322).  The following month, he reported anxiety regarding "when the next attack" of lower back pain would occur (Tr. 369).

In July, 2009, Jeffery Sellers, M.D. recommended the treatment of cold radiofrequency ablation (Tr. 358).   In September, 2009, Plaintiff reported limited improvement following steroid injections (Tr. 371).  In October, 2009, Dr. Sellers noted a normal mood and affect (Tr. 361).  A December, 2009 MRI of the lumbar spine, showing the lack of nerve root compromise, was essentially unremarkable except for "minimal degenerative changes at L2-3 and L4-5 (Tr. 355).  In April, 2010, Plaintiff underwent the ablation procedure (Tr. 366).  Dr. Dare's notes state that he would "work on referral for psychologist" (Tr. 372).  The same month, Dr. Dare opined that Plaintiff was capable of

lifting up to 50 pounds occasionally and up to 10 frequently (Tr. 368).

In August, 2010, Plaintiff underwent successful outpatient surgery for the removal of a skin cancer (Tr. 373). He underwent the same procedure the following month without complications (Tr. 375-376). In October, 2010, Plaintiff sought pain management treatment (Tr. 379-380). Dr. David Tom, M.D. noted that a neurological examination was unremarkable (Tr. 380). Plaintiff reported level "10" pain (Tr. 383). The following month, urine tests were positive for marijuana use (Tr. 385). In December, 2010, Plaintiff reported that pain, when present, interfered with "only some daily activities" (Tr. 386). He was prescribed Morphine and MS Contin (Tr. 386). Treating notes state that he did not appear to be in acute or chronic distress (Tr. 387).

In January, 2011, Plaintiff demonstrated a normal range of motion in all extremities (Tr. 390). Dr. Tom noted Plaintiff's reports of level "10" pain, but observed that no evidence of acute or chronic distress (Tr. 427-428). He noted that Plaintiff did not require the use of an assistive device (Tr. 428). He found that Plaintiff appeared neurologically and psychologically unremarkable (Tr. 428). In February, 2011, Chatur Babaria, M.D. found that Plaintiff was capable of lifting 20 pounds occasionally and 10 frequently with a sit/stand option, but that he would be required to lie down at unpredictable intervals throughout the workday (Tr. 405-406). Dr. Babaria also found that Plaintiff experienced limitations in reaching and pulling; would be required to avoid concentrated exposure to extremely cold environments and hazards; and was limited to occasional twisting, stooping, crouching, and

-6-

climbing (Tr. 407). Dr. Babaria opined that due to Plaintiff's physical problems, he would miss more than three days of work each month (Tr. 408).

In March, 2011, Mary Louise Hymen performed a functional capacity assessment, finding that Plaintiff's range of trunk motion was limited to 70 percent (Tr. 412). She noted that Plaintiff drove to and from the evaluation (Tr. 413). His grip strength was within normal limits (Tr. 414). She found that Plaintiff could sit for up to 30 minutes and stand for 15 before requiring a position change (Tr. 414). She found that he was able to walk on a "rare" basis (Tr. 414). She opined that Plaintiff was unable to perform even sedentary work, stating that she hoped that the assessment "could assist in a positive outcome in [the] case" (Tr. 414).

## 2. Non-treating Sources

In June, 2008, D. Scott Kreiner, M.D. examined Plaintiff, noting full muscle strength in the lower extremities (Tr. 263). The neurological examination was unremarkable (Tr. 263). He found that Plaintiff experienced a 23 percent impairment based on a disorder of the right sacroiliac joint (Tr. 264).

In May, 2009, Richard Palmer, M.D. performed a one-time consultative examination, noting Plaintiff's report that his back pain was 60 to 70 percent improved since the August, 2006 surgery (Tr. 303). Plaintiff denied radiating pain, estimating level "2 to 3" pain on a scale of 1 to 10 in the lower back and level "5" pain at the S1 joint (Tr. 303-304). Plaintiff reported that he was able to cook and care for his personal needs (Tr. 304). He did not

require the use of a walker, cane, or wheelchair (Tr. 304). He exhibited a normal gait and was able to squat and rise without difficulty (Tr. 305). He demonstrated 5/5 strength in all muscle groups (Tr. 305). Dr. Palmer found that Plaintiff could lift 20 pounds on an occasional or frequent basis; and stand, walk, or sit for up to eight hours in an eight-hour workday but was limited to occasional kneeling, crouching, crawling; frequent stooping and climbing of stairs; and precluded from all climbing or ladders, ropes, or scaffolds and working around heights (Tr. 307-309). The same month, Christopher Maloney, M.D. performed a non-examining Physical Residual Functional Capacity Assessment of the treating and consultative records, adopting the findings of Dr. Palmer except for a finding that Plaintiff was capable of occasional climbing of ladders, ropes, and scaffolds (Tr. 313) and was precluded from concentrated exposure to working with height rather than a total preclusion on such work as found by Dr. Palmer (Tr. 315).

In August, 2009, Hubert R. Estes, M.D. performed a Psychiatric Review Techique, finding the absence of a medically determinable psychological condition (Tr. 339). He found that Plaintiff's allegations of cognitive limitations were undermined by his ability to provide a detailed history of his condition and the absence of treating records showing psychological or mental problems (Tr. 351).

### 3. Evidence Submitted After the ALJ's April 29, 2011 Opinion

Dr. Tom's February, 2011 treating notes state that Plaintiff reported increasing pain but did not appear in chronic or acute distress (Tr. 433-434). He was able to walk without

the use of an assistive device (Tr. 434). In March, 2011, Dr. Tom noted Plaintiff's report that pain did not prevent him from walking and that he was able to sit for unlimited periods (Tr. 436). Plaintiff exhibited a normal range of motion (Tr. 437). He appeared unremarkable from a neurological and psychological perspective (Tr. 437-438). On April 19, 2011, Plaintiff underwent the removal of additional basil cell carcinomas (Tr. 430-431). Dr. Tom's April 25, May 23, and June 20, 2011 treating notes (stating almost identical findings to the February and March records) also state that Plaintiff exhibited a normal gait and station (Tr. 439-445). May, 2011 records show that Plaintiff underwent additional treatment for skin cancer with good results (Tr. 456-459). On September 22, 2011, Justin Skrzynski, M.D. completed a Medical Examination Report for the State of Michigan, opining that due to pain caused by the removal of multiple skin cancer legions, Plaintiff was unable to work (Tr. 469-470). Dr. Skrzynski noted that he first examined Plaintiff on September 9, 2011 (Tr. 469). September through December, 2011 records show that Plaintiff continued to receive treatment for skin cancer (Tr. 460-467).

## C.    Vocational Expert Testimony

VE Sandra Richter classified Plaintiff's former jobs in "production positions" and sales manager as exertionally light and skilled[3] (Tr. 47). The VE testified that if Plaintiff's

---

[3]20 C.F.R. § 404.1567 (a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25

allegations of limitation were fully credited, he would be unable to perform any of his past relevant work (Tr. 47). She stated that if Richard Palmer, M.D.'s findings were credited, Plaintiff would could perform his past relevant work[4] (Tr. 47-48, 307-309).

In contrast, the VE found that if Mary Louise Hymen's finding that Plaintiff was unable to perform even sedentary work were credited, all work would be precluded (Tr. 48, 411-414). She found further that if Dr. Babaria's February, 2011 assessment that Plaintiff was capable of lifting 20 pounds occasionally and 10 frequently with a sit/stand option were credited, all work would nonetheless be precluded based on Dr. Babaria's opinion that Plaintiff needed to lie down at unpredictable interval throughout the workday (Tr. 48, 406). The VE found that if Dr. Dare's March, 2009 assessment were credited (Tr. 397), Plaintiff would be capable of his past relevant work (Tr. 49).

In response to questioning by Plaintiff's counsel, the VE testified that if Dr. Dare's April, 2010 report that Plaintiff was unable to sit for more than two hours continuously were credited, Plaintiff would be unable to perform sedentary work, but could perform light work (Tr. 50, 368).

---

pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

[4]Dr. Palmer found that Plaintiff was able to lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour period; and was limited to frequent climbing of stooping  and climbing stairs; occasional kneeling, crouching, and crawling; and precluded from all ladder, rope,  scaffold climbing or working around heights as found by(Tr. 307-309)

D.      **The ALJ's Decision**

Citing the medical transcript, ALJ Moulaison found that although Plaintiff experienced the severe impairments of "lumbar degenerative disc disease status post two lumbar fusion surgeries and sacroilitis," neither of the conditions met or equaled an impairment listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 18-19). He found that Plaintiff retained the Residual Functional Capacity ("RFC") for exertionally light work with the following additional restrictions:

> [Plaintiff] is unable to climb ladders, ropes, and scaffolds. The claimant can only occasionally kneel, crouch, or crawl. The claimant should avoid concentrated exposure to hazards" (Tr. 19).

Citing the VE's testimony, he concluded that Plaintiff could perform his past relevant work as a production worker and salesperson (Tr. 24).

ALJ Moulaison discounted Plaintiff's allegations of disability, citing Plaintiff's December, 2008 report that he managed his pain with over-the-counter pain relievers (Tr. 20). The ALJ noted that Plaintiff's May, 2009 joint pain was managed with the use of Cymbalta, Lyrica, and Vicodin (Tr. 20). He noted that Plaintiff reported "only intermittent radicular symptoms" (Tr. 20). He cited Plaintiff's statement to Dr. Palmer that he had achieved "60-70 percent" improvement in pain levels after undergoing surgery (Tr. 22). The ALJ noted "significant periods of time since the alleged onset date" in which Plaintiff had not required the use of prescription pain medicine (Tr. 23).

The ALJ accorded "significant weight" to Dr. Dare's assessment but noted that "the

-11-

objective findings in the record do not fully support the limitations" regarding Plaintiff's ability to sit (Tr. 24). He accorded "great weight" to the opinion of Dr. Palmer, but rejected Dr. Barabaria's finding that Plaintiff would be required to lie down at unpredictable intervals during the course of the workday (Tr. 24).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. § 405(g); *Sherrill v. Secretary of Health & Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986) (en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health & Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

-12-

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. § 416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir. 1984).

## ANALYSIS

Plaintiff, now proceeding *pro se,* makes multiple arguments in support of a remand for benefits. His initial arguments ("initial brief"), attached to the Complaint assert that (1) the ALJ showed bias toward him by mentioning his marijuana use[5] (2) the ALJ erred by

---

[5]In the course of making this argument, Plaintiff also asserts that the ALJ violated his "oath of office" by attributing his disability to marijuana use. *Initial Brief* at 8. As discussed below, the ALJ did not find that Plaintiff's marijuana use was responsible for

discounting Dr. Barabaria's opinion and (3) the Step Four finding that he could perform his past relevant work was not supported by substantial evidence (pg. 15). *Initial Brief, Docket #1.*[6]

Plaintiff later submitted *Brief in Response to the Defendant's Answer* ["supplemental brief"] noting that he reapplied for benefits in December, 2012 and was awarded Supplemental Security Income ("SSI") on March 1, 2013. *Supplemental Brief,* 3-4, *Docket #13.* He asserts that the same March, 2013 award of benefits was made "using the exact same case record and evidence" as in the current claim. *Id.*

### A. The  Discussion of Plaintiff's Marijuana Use

The Social Security Act provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(c). The test for a contributing factor material to determining disability is whether a claimant would still be disabled if he stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(1).[7]

---

the alleged disability.   Moreover, because Plaintiff has failed to develop his "skeletal" arguments of judicial misconduct and constitutional violations, he has waived them. *McPherson v. Kelsey,* 125 F.3d 989, 995-996 (6th Cir. 1997).

   [6]Citations to Plaintiff's briefs use the page number assigned by CM/ECF, *i.e., Initial Brief* at 16 of 32, *etc.*

   [7]Defendant notes correctly that Plaintiff erroneously relies on 20 C.F.R. § 416.935 which refers to an application for Supplemental Security Income rather than DIB.  In any case, the language of § 404.1535(b)(1) and § 416.935 is virtually identical.

Plaintiff's argument that the ALJ showed bias against him because he was a marijuana user is without merit. He asserts, in effect, that the ALJ erroneously found that "but for" the marijuana use, that Plaintiff was capable of substantial gainful activity. The administrative opinion's reference to marijuana use is limited to three sentences:

> Treating sources noted a positive urine drug screen for marijuana but indicated in January, 2011 that the claimant's marijuna levels were decreasing. The claimant reported that he had stopped using marijuana. He reported feeling well in January 2011 (Tr. 21-22)(internal citations omitted).

The ALJ's summation does not constitute grounds for remand. First, the ALJ's brief mention of the marijuana use is contained in the thorough three-page, single-spaced summation of Plaintiff's medical history (Tr. 19-22). The ALJ's reasons for discounting Plaintiff's credibility, found later in the administrative opinion, do not contain reference to the marijuana use or even suggest that any of Plaintiff's limitations were attributable to illicit drug use (Tr. 23-24). The ALJ provided numerous, well supported reasons for discounting Plaintiff's allegations of disability absent any reference to the marijuana use.

Second, the passing reference to marijuana use contained in the medical history portion of the opinion is an accurate summation of Dr. Tom's January, 2011 treating records stating that Plaintiff denied current marijuana use, but would be nonetheless required to submit urine samples as a condition of the continued use of narcotic pain medication[8] (Tr.

---

[8]Notably, the ALJ did not cite treating notes from the same month referring to a second "breach" of Plaintiff's narcotics agreement by his use of an earlier prescribed pain medication in conjunction with his currently prescribed narcotics (Tr. 394).

429).    Finally, the ALJ's observation that Plaintiff reported feeling well was amply supported by the January 31, treating records noting Plaintiff's report that he obtained moderate relief from currently prescribed pain relievers and did not experience limitations in sitting or walking (Tr. 427).  Because no evidence supports the finding that marijuana use played into the non-disability finding or that the ALJ otherwise misapplied § 404.1535(b)(1), remand on this basis is unwarranted.

### B.  The Treating Source Analysis

An opinion of limitation or disability by a treating source is entitled to deference. "[I]f the opinion of the claimant's treating physician is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted)(citing *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir.2004).  Further,

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

Wilson, at 544 (citing 20 C.F.R. 404.1527(c)(2–6)).

The failure to provide "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. Commisioner of Social Security*, 710 F.3d 365, 376

-16-

(6th Cir.2013) (citing *Wilson*, at 544–446). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.' " *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir.2011); § 404.1527(c)(2). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart,* at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

The ALJ did not err by declining to adopt Dr. Barabaria's Feburary, 2011 opinion that Plaintiff would be required to lie down at unpredictable intervals during the course of a workday, noting that the "limitation [was] not confirmed by the treating record" (Tr. 24). My review of the treating records fails to reveal any reference to the need to recline periodically. In support of the RFC, the ALJ gave significant weight to Dr. Dare's treating source assessments, which made no mention of the need to lie down multiple times each day, and Dr. Palmer's May, 2009 consultative findings (Tr. 23, 303, 368). *See Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391–392 (6th Cir.2004)(in the presence of contradicting substantial evidence, an ALJ may reject all or a portion of the treating source's findings).

While Plaintiff also contends that the ALJ ought to have adopted Ms. Hymen's March, 2011 functional capacity assessment, the ALJ provided a number of compelling reasons to reject that assessment. Citing SSR 06-3p, the ALJ noted that Hymen was neither a "treating

-17-

source" or even an "acceptable medical source" (Tr. 23). Thus, even assuming that she had

been a physician or psychologist, the ALJ was not required to give deference to her opinion.

*See Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994)(non-treating source opinions "entitled

to no special degree of deference."*)*. Further, the ALJ did not err in noting that Ms. Hymen

did not have access to Plaintiff's medical records (Tr. 23). Notably, Plaintiff's treating

records during this period (stating that he denied problems "walking any distance" or any

sitting limitations) stand directly at odds with Ms Hymen's finding that Plaintiff was limited

to walking on a "rare" basis (Tr. 389).

Plaintiff also faults the ALJ's statement that it was "not clear who referred the

claimant to Ms. Hymen or why the claimant was evaluated by Ms. Hymen" (Tr. 23).

Plaintiff refers to the cover sheet of Ms. Hymen's report as evidence that he was referred to

Ms. Hymen by treating physician Dr. Tom. *Initial Brief* at 11 (citing Tr. 410). While the

cover page of the report lists treating sources Drs. Siwek and Tom as "referrals," Dr. Tom's

treating notes from two month earlier indicate that Plaintiff proposed a functional assessment

for the express purpose of supporting his claim for disability benefits (Tr. 429). In response,

Dr. Tom declined to provide an assessment, but stated that his office "would be willing" to

provide a referral (Tr. 429). None of Dr. Tom's treating records indicate that he found a

medical need for a functional assessment or endorsed Ms. Hymen's findings. The ALJ's

inference that the assessment was requested for the purpose of furthering the disability claim

was not erroneous. The ALJ did not err in noting the Ms. Hymen's conclusion that Plaintiff

-18-

was incapable of even sedentary work was based on Plaintiff's subjective claims rather than her own fairly unremarkable findings (Tr. 412-414).   It bears repeating that the ALJ accurately noted that the assessment stood at odds with treating findings stating that Plaintiff was able to drive, perform household chores, and sit and walk without limitation (Tr. 23, 386-387, 427-429).

## C. The RFC and Step Four Determination Were Well Supported

Plaintiff argues next that the ALJ erred by omitting several diagnoses found in the "entire case file" including "Right S1 joint disfunction, lumbar radiculopathy, herniated Disc's (sic) L2-3 and L4-5, facet arthritis, lumbar dextro scoliosis, failed back syndrome, chronic basil cell cancer, post-traumatic stress disorder, and depression." *Initial Brief* at 16. On a related note, he disputes the Step Four finding that he was capable of performing his past relevant work. *Id.* at 16-18.

### 1. Consideration of Plaintiff's Limitations

In effect, Plaintiff argues that the above-stated conditions ought to have been included among the severe impairments at Step Two of the administrative sequence.  Contrary to this contention, the ALJ's Step Two findings and discussion of the medical conditions at the subsequent steps of the analysis do not constitute error.  As to the back conditions, the ALJ found that "lumbar degenerative disc disease status post two lumbar fusion surgeries and sacroilitis" were severe impairments (Tr. 18).  This is consistent with Plaintiff's application for benefits in which he alleges joint dysfunction that required a fusion procedure,

-19-

degenerative disc disease, and "sacrum disorders" (Tr. 176).  Having acknowledged that Plaintiff underwent two surgeries for a disc herniation affecting the lumbar and sacrolumbar spine and the ongoing condition of sacroilitis, the ALJ was not required to restate the alleged impact of the condition on each vertebra to account for Plaintiff's work-related limitations.  *See Pompa v. Commissioner of Social Sec.,* 73 Fed.Appx. 801, 803, 2003 WL 21949797, * 1 (6th Cir. August 11, 2003) (unpublished)(a Step Two omission of "little consequence," provided that the ALJ consider "all impairments, severe and non-severe," in crafting the RFC).   The finding that Plaintiff could perform light work limited by certain postural and environmental limitations resulting from the back condition is well explained and supported.

Likewise, the ALJ's omission of basal cell carcinoma from the Step Two impairments does not constitute error.  While Plaintiff relies on the "entire case file," in support of his argument, the ALJ did not have benefit of a September 22, 2011 "disability finding" regarding the skin cancer at the time he issued the April 29, 2011 opinion.  Moreover, the evidence before the ALJ does not suggest that skin cancer created work-related limitations.  Plaintiff's testimony, including statements elicited by his attorney, does not indicate that the skin cancer created any degree of limitation.   January, 2011 records by Plaintiff's dermatologist state that Plaintiff felt "well" despite the diagnosis of the condition (Tr. 416-418).

Plaintiff's contention that the conditions of depression and post-traumatic stress disorder ought to have been considered work-related impairments is also weakly supported

-20-

by the records before the ALJ. May, 2009 treating records note that Plaintiff reported that Cymbalta improved his mood and "prevent[ed] him from getting depressed from the pain" (Tr. 322). While Dr. Dare's April, 2010 treating notes state that Plaintiff requested a psychological referral (Tr. 372), the transcript does not contain any psychological or psychiatric treating records. Dr. Tom's subsequent treating notes state that Plaintiff appeared consistently well oriented with a normal mood and cognitive functioning (Tr. 380, 487, 427-428).

### 2. The Past Relevant Work

In addition to disputing the RFC, Plaintiff argues that DOT job codes provided by the VE did not correspond to his past relevant work. *Initial Brief* at 16-18. He faults the ALJ for failing to ask him to "describe [the] work and how he did his past jobs." *Initial Brief* at 17. He disputes the VE's testimony that he performed the job of "trainer." *Id.* He asserts that the "water treatment salesperson" job cited by the VE referred to residential sales but his former job "in the commercial/industrial areas . . . ha[d] much more travel." *Id.*

At Step Four, a three-prong test must be met in order to find that a claimant can return to his past relevant work "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC permits a return to that past job." SSR 82–62, 1982 WL 31386, *2 (1982). In finding that Plaintiff can perform his past relevant work, the Commissioner first considers whether the claimant has the RFC to perform the functional demands and duties of a past job

as formerly performed by the claimant. SSR 82–61, 1982 WL 31387, at *2 (1982). If so, the claimant is not disabled. If not, the Commission considers whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Id.* Thus, if a claimant has the RFC to work at his or her past job as actually performed, even if that particular job is less demanding than the work as generally performed, or even if it involves fewer hours or greater opportunity for rest, he or she will be found not disabled at step four. *Stephens v. Shalala,* 50 F.3d 538, 542 (8th Cir.1995).

Plaintiff's argument is wholly without merit. The VE began her testimony by stating that Plaintiff's past jobs (listed in reverse chronological order as part of his application for benefits)--(1) production manager (2) sales manager, and (3) production manager-- corresponded respectively to the Dictionary of Occupational Titles job descriptions for a trainer, DOT Code 166.227-010 (training representative); sales, 279.357-034 (sales representative, water-softening equipment); and supervisory production position, 012.167-050 (production planner) (Tr. 47, 212-215). While Plaintiff presently argues that he has never worked as a trainer, he stated in his application for benefits that his most recent job was as a "production manager" primarily involving "employee training" (Tr. 213). The VE did not err in finding that the position corresponded to the DOT position of trainer. Plaintiff asserts that his former job as sales manager for "water treatment equipment" involving commercial sales which "has much more travel" than the job listing cited by the VE. The

fact that the job as generally performed in the national economy (as described by the DOT) varies from the manner in which Plaintiff actually performed his former sales job does not prevent the ALJ from finding that he was not disabled at Step Four. *See* SSR 82–61, *supra.* Further, Plaintiff's argument that his old sales job, as performed, required much more driving time than the one described in the DOT undermines, rather than supports his argument that he was incapable of doing the job as regularly performed in the national economy.

While Plaintiff argues that he has not worked as a "production planner" in the past 15 years, he describes his former job as a "production manager" (performed between November, 1988 and May, 2000) as requiring hiring, firing, preparing financial reports, directing employees working on projects (Tr. 212, 215). Likewise, the "production planner" position described in the DOT requires the supervision of production workers, "scheduling workflow for each department and operation," and preparing production reports and purchase orders. DOT Code 012.167-050.

Finally, Plaintiff faults the ALJ for failing to ask him how he performed his past work or whether the VE's job findings corresponded with the former work. This argument fails for two reasons. First, Plaintiff provided descriptions of the work requirements of his former jobs at the time of his application (Tr. 212-215). Regardless of the fact that the job *titles* stated by Plaintiff did not match those found in the DOT, the VE's testimony regarding the DOT was taken from Plaintiff's own description of his past jobs. Further, while Plaintiff was

-23-

represented by counsel at the hearing, neither Plaintiff nor his attorney objected to the VE's job findings (Tr. 47-50).   As such, the ALJ's Step Four finding does not provide grounds for remand.

### D.  The Subsequent Award of Benefits Does Not Establish Error in This Case

Last, Plaintiff alleges that he was awarded Supplemental Security Income ("SSI") "on March 1, 2013." *Supplemental Brief* at 2.   He argues that the newer decision was made "using the exact same case record and evidence" as in the present case. *Id.* at 3.   He contends that the newer decision should be considered in determining whether the ALJ erred in the present case.   Plaintiff references a copy of the decision as an exhibit, but did not enclose an exhibit with the brief.

This argument is unavailing for multiple reasons.   First, Plaintiff's argument that the newer decision was made "using the exact same case record and evidence" appears to include evidence before the ALJ and records added to the current transcript *after* the ALJ's decision. Evidence submitted subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993).   To establish grounds for a "Sentence Six" remand based on such material, Plaintiff would be required to show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." 42 U.S.C. § 405(g).

The records pertaining to Plaintiff's condition after the date of the administrative opinion are intrinsically irrelevant to whether he was disabled on or before that date.   *See*

-24-

*Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir.1988)(records related to a claimant's condition *after* the administrative decision not "material" to the ALJ's findings).   For example, the newer records from September, 2011, comprised of Dr. Skrzynski's treatment records beginning on September 9, 2011 and the September 22, 2011 disability opinion, could provide grounds for a subsequent award  of benefits but do not provide insight into Plaintiff's condition on or before April 29, 2011 (469-470).  If a claimant believes that he  can establish disability after the date of the decision, his remedy would be to apply for benefits for a new period.  *Id.*  This is exactly what Plaintiff did.  While the September, 2011 records were presumably considered in determining whether he was disabled during the newer period, they do not provide a basis for changing the current decision.[9]  And while the Court cannot speculate on the precise basis for  the  subsequent  alleged  award  of  benefits,  Plaintiff  was  classified  as  a  "younger individual"  at the time of the ALJ's April, 2011 decision.  I note that Plaintiff turned 50 on February 13, 2012.  This placed him in the  "closely approaching advanced age" category at

---

[9]

        For differing reasons, Dr. Tom's treating records created between February and April, 2011 do not provide grounds for a Sentence Six remand.  These records, showing that Plaintiff exhibited a normal gait and station (Tr. 439-445) and could sit or walk for unlimited periods (Tr. 436-438) support, rather than undermine the ALJ's findings and would thus be unlikely to change the decision.  *Id.* at 711.  Likewise, records showing that Plaintiff underwent outpatient procedures for the removal of basil cell carcinomas (created the month after the decision but arguably relevant to his pre-decision condition) show good results (Tr. 456-459).  As such, remand for consideration of the newly submitted evidence is not warranted.

the time of his December, 2012 application for SSI.  20 C.F .R. §§ 404.1563, 416.963.   His age, combined with other factors, would allow him to establish disability more easily than in the present case.  For example, a finding that he was unable to perform his past relevant work (combined with a determination that the newer evidence showed that he was restricted to sedentary work) would result in a disability finding.  Appendix 2, Subpart P, Part 404 , Medical–Vocational Guidelines, Rule 201.12.

Despite Plaintiff's challenge to almost every aspect of the administrative opinion, the ALJ's decision, well explained and supported, was easily within the "zone of choice" accorded the fact-finder at the administrative level.   *Mullen, supra,* 800 F.2d at 545.  As such, I recommend that the Commissioner's decision be upheld.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 17, 2014

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on July 17, 2014, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen