THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD ACORD,

       Plaintiff,                                 Civil Action No.
                                                              13-CV-12059

vs.

                                                              HON. MARK A. GOLDSMITH

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**OPINION AND ORDER (1) ACCEPTING THE RECOMMENDATION CONTAINED IN THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DATED JULY 17, 2014 (DKT. 27), (2) OVERRULING PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION (DKT. 31), (3) DENYING PLAINTIFF'S MOTION TO DISMISS (DKT. 28), (4) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKTS. 1, 13), and (5) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 20)**

        **I.**        **INTRODUCTION AND BACKGROUND**

This is a Social Security case. Plaintiff Richard B. Acord, proceeding pro se, appeals from the final determination of the Commissioner of Social Security denying his application for disability benefits under the Social Security Act, 42 U.S.C. § 1381(a), et seq. The case was referred to Magistrate Judge R. Steven Whalen (Dkt. 3). The parties have filed cross motions for summary judgment (Dkts. 1, 13, 20).[1] Magistrate Judge Whalen issued a Report and Recommendation (R&R), recommending that the decision of Administrative Law Judge (ALJ) Philip E. Moulaison be affirmed, that Defendant's motion be granted, and that Plaintiff's motion

---

[1] Plaintiff filed a brief attached to his initial complaint, arguing that he is entitled to an award of disability benefits (Dkt. 1). He also filed a brief in response to Defendant's answer to the complaint (Dkt. 13). In the Report and Recommendation (Dkt. 27), Magistrate Judge Whalen addresses the arguments Plaintiff raises in both briefs.

1

be denied (Dkt. 27). Plaintiff has filed objections to the R&R (Dkt. 31).[2]

The factual and procedural background of this case, along with the standard of review and legal principles governing Social Security appeals, have been adequately set forth by the Magistrate Judge in his R&R and need not be repeated in full here. Plaintiff, who was born on February 13, 1962, has previously worked as a production manager and sales manager. Administrative Record ("A.R.") at 147, 212 (Dkt. 11). Plaintiff asserts that the conditions limiting his ability to work include lumbar fusion, joint dysfunction, degenerative disc disease, "sacrum disorders," and skin cancer. Id. at 38-39, 176. On April 29, 2011, the ALJ issued his decision that Plaintiff was not disabled from June 11, 2008, through the date of the decision. Id. at 16. Plaintiff requested a review of this decision, id. at 11, and the Appeals Council denied this request. Id. at 2. At that point, the ALJ's decision became the final decision of the Commissioner. Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 543-544 (6th Cir. 2004).

The ALJ based his decision on an application of the Commissioner's five-step sequential disability analysis to Plaintiff's claim.[3] The ALJ's findings were as follows:

- Under Step One, Plaintiff met the insured status requirements through December 31,

---

[2] Plaintiff initially submitted an unsigned document entitled "Plaintiff Appeal's the Trial Court's Recommendation." (Dkt. 29.) The Court construed this document as Plaintiff's objections to the R&R. See Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings."). The Court subsequently issued an order directing Plaintiff to submit a signed copy of his objections by August 20, 2014; otherwise his objections would be struck (Dkt. 30). Plaintiff timely submitted a signed document entitled "Plaintiff's Objections to the Magistrate Judge's Report and Recommendation." (Dkt. 31.) This new submission contains objections identical to those submitted previously, and the Court now addresses each in turn.

[3] "Disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ's decision and the R&R adequately set forth the applicable five-step analysis. A.R. at 17-18; R&R at 12-13. See also 20 C.F.R. § 416.920(a) (explaining the five-step sequential evaluation process).

2

2013, and Plaintiff had not engaged in any substantial gainful activity since June 11, 2008. A.R. at 18.

- Under Step Two, Plaintiff had the following severe impairments: lumbar degenerative disc disease status post two lumbar fusion surgeries and sacroilitis. Id.

- Under Step Three, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Id. at 19.

- Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 C.F.R. [§] 404.1567(b) except the claimant is unable to climb ladders, ropes, and scaffolds. The claimant can only occasionally kneel, crouch, or crawl. The claimant should avoid concentrated exposure to hazards." Id.

- Under Step Four, Plaintiff was capable of performing past relevant work as a production worker and a salesperson. Id. at 24.

Therefore, at Step Four, the ALJ determined that Plaintiff was not disabled. Id. at 25.

Plaintiff filed a complaint in this Court to contest the ALJ's decision (Dkt. 1). Magistrate Judge Whalen issued his R&R recommending that Plaintiff's summary judgment motion be denied, and Defendant's summary judgment be granted, on the grounds that the ALJ's determination properly applied the Social Security regulations and the treating physician rule, and was supported by substantial evidence (Dkt. 27). For the reasons that follow, the Court will accept the recommendation contained in the R&R, overrule Plaintiff's objections to the R&R, deny Plaintiff's motion for summary judgment, and grant Defendant's motion for summary judgment.

## II.   STANDARD OF REVIEW

The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Under 42 U.S.C. § 405(g), this Court's review is limited to determining whether the Commissioner's decision "is supported by substantial evidence and was made pursuant to proper legal standards." Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (citation and quotation marks omitted). "Substantial

3

evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In determining whether substantial evidence exists, the Court may "look to any evidence in the record, regardless of whether it has been cited by [the ALJ]." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001). "[T]he claimant bears the burden of producing sufficient evidence to show the existence of a disability." Watters v. Comm'r of Soc. Sec., 530 F. App'x 419, 425 (6th Cir. 2013) (citations omitted).

### III. ANALYSIS

Plaintiff raises objections to the following alleged errors by the ALJ and the Magistrate Judge: (i) the claimed failure to discuss Plaintiff's narcotic pain medications and their side effects, Obj. at 1-6 (Dkt. 31); and (ii) the extension of time afforded to Defendant to file a motion for summary judgment. Id. at 6-7. The Court will address each objection in turn and, for the reasons that follow, will overrule each objection.

**A. Objection One**

Plaintiff argues that the ALJ erred in failing to consider the type, dosage, effectiveness, and side effects of his narcotic medication. Obj. at 1. Plaintiff asserts that the limitations caused by the side effects should have been incorporated into the RFC determination. Id. at 2. Plaintiff further argues that the fact that his treating physicians prescribed him narcotics demonstrates that Plaintiff's impairments caused him chronic pain. Id. at 3-4. Plaintiff also argues that the ALJ never inquired as to the side effects of the narcotics or whether Plaintiff could work without his medications. Id. at 6. Plaintiff contends that he could not perform any job due to the side effects of his medications; in particular, Plaintiff contends that he would not be able to drive for the job of sales representative. Id. at 8.

4

The ALJ's opinion contained several references to Plaintiff's narcotic medications. The ALJ noted that Plaintiff was prescribed Tramadol and Vicodin, and that he subsequently reported an improvement in his pain. A.R. at 20. The ALJ further noted that although Plaintiff reported continued back pain, he also indicated improvement and increased productivity with the use of Percocet. Id. at 21. The ALJ referenced evidence that Plaintiff's pain was well managed with OxyContin. Id. The ALJ explained that while conservative treatment such as narcotic pain medication "would normally weigh somewhat in [Plaintiff's] favor," the record shows that this treatment has been generally successful in controlling his pain. Id. at 22.

As an initial matter, the Court construes Plaintiff's objection regarding his narcotic medications to raise two arguments: (i) the fact that Plaintiff was prescribed narcotic medications shows that he has a disabling pain condition and (ii) the ALJ erred in not discussing or considering the side effects of these medications in making the determination as to Plaintiff's functional limitations. The Court addresses each argument in turn.

The Court, first, rejects Plaintiff's argument that his prescriptions for narcotic medications, in and of themselves, suffice to demonstrate that his impairments caused him severe chronic pain, thus rendering him incapable of working. Although prescriptions for narcotic pain medications are consistent with symptoms of chronic pain, substantial evidence supports the ALJ's conclusion that his medications have been generally successful in controlling his pain and increasing his ability to function. For example, Plaintiff's treating physician, Dr. Jeff Dare, indicated in March 2009 that Plaintiff was seeking something to control his pain, and that Plaintiff reported good results with Vicodin in the past. A.R. at 330. Plaintiff was prescribed Vicodin, and in May 2009, Dr. Dare stated that Plaintiff reported good pain management with Vicodin and wanted to continue with his medications. Id. at 322, 324. Although Plaintiff

5

continued to report episodes of back pain, in July 2009, Plaintiff indicated that he had been managing his back pain with Percocet and requested a refill of Percocet; he further reported that he had been more productive and able to do some activities, such as painting. Id. at 370, 396. In October 2010, Dr. David Tom, one of Plaintiff's treating physicians, indicated that he would initiate Plaintiff on opiate pain medications, id. at 381-382; in January 2011, Plaintiff reported that his pain interfered with personal care, standing, and sleeping (even when he took his medications), but that "[p]ain killers give moderate relief from pain" and that he could walk and sit for unlimited periods of time. Id. at 436. At the hearing before the ALJ, Plaintiff explained that he drives three days per week, that he was taking morphine and oxycodone, and that the medications have helped him. Id. at 36, 40, 43.

The Court concludes that the above-referenced medical reports and testimony constitute substantial evidence that Plaintiff's narcotic pain medications were at least generally successful at controlling his pain and increasing his functioning. The improvement of Plaintiff's condition with medication undercuts the claimed severity of the limiting effects of his back pain. See Torres v. Comm'r of Soc. Sec., 490 F. App'x 748, 754 (6th Cir. 2012) (noting that improvement of a condition with medication and treatment weighs against the claimed severity of the condition). For these reasons, the Court rejects Plaintiff's argument that his prescriptions for narcotic medications, in and of themselves, suffice to demonstrate the existence of disabling pain. See Francis v. Comm'r of Soc. Sec. Admin., 414 F. App'x 802, 806 (6th Cir. 2011) ("[Plaintiff] argues that consuming pain medication is itself evidence that he experiences moderate to severe pain . . . . But it is just as consistent with a finding that [Plaintiff's] medications adequately manage his pain and enable him to work full time with some restrictions. This . . . is all that the substantial-evidence standard requires.").

6

The Court next turns to Plaintiff's argument that the ALJ erroneously failed to consider the side effects of narcotic medications in determining Plaintiff's functional limitations. As an initial matter, the Court has carefully reviewed the briefs Plaintiff presented to the Magistrate Judge (Dkts. 1, 13), and in those briefs, Plaintiff did not squarely raise any argument that the ALJ failed to consider the side effects of his medications. Because Plaintiff failed to raise this argument before the Magistrate Judge, the Court may properly deem this argument waived. See, e.g., Murr v. United States, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (noting that parties are not permitted "to raise at the district court stage new arguments or issues that were not presented to the magistrate"); Swain v. Comm'r of Soc. Sec., 379 F. App'x 512, 517-518 (6th Cir. 2010) ("[A] claim raised for the first time in objections to a magistrate judge's report is deemed waived." (citations and quotation marks omitted)).

Regardless, the Court concludes that Plaintiff's argument as to the side effects of the narcotic medications lacks merit. It is true, as Plaintiff contends, that vocationally-limiting side effects of medications must be considered in assessing a claimant's RFC. See SSR 96-8p ("The RFC assessment must be based on all of the relevant evidence in the case record, such as . . . [T]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication). . . . "); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 247 (6th Cir. 2007) (noting that "side effects of any medication taken to alleviate the symptoms" is a relevant factor to consider in evaluating a claimant's symptoms). However, here, there is insufficient evidence in the record to show that any side effects from Plaintiff's medications interfered with his ability to perform light work with limitations on climbing, kneeling, crouching, crawling, and exposure to hazards.

7

Upon a review of the medical records, although there is evidence that the prescribed narcotics may cause side effects of drowsiness and sleepiness, there is little evidence in the record as to the functionally limiting effects of such side effects as experienced by Plaintiff; indeed, as the Court concluded above, substantial evidence in the record supports the ALJ's conclusion that the narcotic medications generally improved Plaintiff's symptoms and functioning.[4]  See, e.g., A.R. at 394 (noting that the restrictions of Plaintiff's medication regime include no driving, no use of hazardous machinery, no use of medicine at work, and no unprotected heights); but see id. at 413 (reporting that Plaintiff's medications help reduce his pain, that Plaintiff can perform his personal self-care and household activities, and that Plaintiff is able to drive).[5]

Furthermore, Plaintiff has not shown that the asserted side effects of the medication, such as drowsiness, would preclude his performance of past relevant work as a production manager or salesperson, as such work is performed in the national economy.  A review of the descriptions for these positions set forth in the Dictionary of Occupational Titles ("DOT") does not reveal

---

[4] The Court notes that, although Plaintiff asserts in a conclusory fashion that, "[t]he record will show the Plaintiff complained of dizziness, drowsiness, and sleepiness," obj. at 6, Plaintiff does not actually provide record citations as to the side effects of his narcotic medications.

[5] The record also contains a medical report from Dr. Tom, dated May 23, 2011, stating that Plaintiff's medication was reduced due to Plaintiff's complaints of somnolence.  A.R. at 445.  However, this report was not submitted to the ALJ and was, instead, submitted as additional evidence to the Appeals Council.  Id. at 6-7.  The Sixth Circuit has "repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review."  Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001) (citation omitted).  Accordingly, the Court does not consider this medical report for the purposes of the present analysis.  Even if the Court were to consider this evidence, it would not override the Court's prior conclusion that substantial evidence supports the ALJ's determination that Plaintiff's medications generally improved his functioning.  See McClanahan v. Comm'r of Soc. Sec., 474 F.3d 830, 833 (6th Cir. 2006) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  This is so because there is a zone of choice within which the Commissioner can act, without the fear of court interference." (citations and quotation marks omitted)).

required work activities, such as driving, operating heavy machinery, or exposure to heights, that would arguably be precluded by side effects of narcotic medications.[6] Although Plaintiff argues that his past work as he performed it included substantial driving, obj. at 8, Plaintiff has not shown that the side effects of the medications would preclude him from performing his past relevant work as it is generally performed in the national economy. See SSR 82-61 (providing that a claimant will be found not disabled if he has the RFC to perform either "[t]he actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy").

Because of the lack of evidence in the record regarding the functionally limiting side effects of Plaintiff's medications, the Court concludes that the ALJ did not err in failing to reference such side effects in his decision. The cases on which Plaintiff relies, in which the medical records contained significant evidence of the limiting side effects of the claimant's medications, are distinguishable. See Flores v. Massanari, 19 F. App'x 393, 400-401 (7th Cir. 2001) (concluding that where there was substantial record evidence of debilitating side effects of the claimant's medication, the ALJ's failure to address such evidence was erroneous); Boddie v. Colvin, No. 12-221, 2013 WL 3990684 (E.D.N.C. Aug. 2, 2013) (concluding that where the record showed that the claimant spent the majority of the day lying down in drug-induced drowsiness, the ALJ's hypothetical to the VE erroneously failed to include limitations stemming from the side effects of the medications).[7]

---

[6] The DOT codes for Plaintiff's past jobs include 166.227-010 (training representative), 279.357-034 (sales representative), and 012.167-050 (production planner).

[7] The Court notes, as well, that the ALJ has no obligation to expressly list and consider every factor contained in the Social Security regulations governing determination of functional limitations. See Storey v. Comm'r of Soc. Sec., 181 F.3d 104 (Table), at *3 (6th Cir. Apr. 27,

Finally, the Court rejects Plaintiff's argument that the ALJ breached a duty to develop the record at the hearing by specifically inquiring as to any side effects of Plaintiff's medications. Contrary to Plaintiff's assumption, "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 214 (6th Cir. 1986). It is true that when some "special circumstances" exist – namely, "when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures," the ALJ may have a special duty to develop the record. Wilson v. Comm'r of Soc. Sec., 280 F. App'x 456, 459 (6th Cir. 2008) (citation omitted). However, these "special circumstances" are not present here; at the hearing, Plaintiff was represented by counsel who examined Plaintiff and, therefore, had ample opportunity to adduce information regarding side effects of the medications. For these reasons, the ALJ did not have a special duty to develop the record in this matter. See also Cherry v. Heckler, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985) (concluding that the ALJ did not have a duty to inquire into possible side effects of the claimant's medications, where the claimant "was represented at the hearing and did not allege that side effects of drugs contributed to her disability. Moreover, the only indication in the record of side effects is her statement before the ALJ that her medication made her drowsy.").[8]

Accordingly, because Plaintiff's allegations of functionally limiting side effects are

---

1999) ("Although the ALJ did not specifically mention these pain medications in his analysis, the fact that he did not include a factor-by-factor discussion does not render his analysis invalid" where other substantial evidence supported his conclusion).

[8] Similarly, Plaintiff's argument that his treating physicians and the consultative examiner did not discuss the side effects of Plaintiff's pain medications, obj, at 5, fails to demonstrate any error in or the ALJ's decision. It is Plaintiff, not his physicians, who has the burden of developing a record sufficient to enable the ALJ to render a disability decision.

10

unsupported by record evidence, the ALJ did not err in failing to incorporate the asserted side effects of these medications in the RFC determination or the hypothetical to the VE. See, e.g., Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." (citation omitted)). Further, for the reasons stated above, the ALJ's determination as to the effects of Plaintiff's medications was supported by substantial evidence.[9]

### B. Objection Two

In his second objection, Plaintiff argues that the Magistrate Judge erred in affording the Defendant extensions of time to file an oversized summary judgment motion, and that such extensions of time gave Defendant an unfair advantage. Obj. at 6-7. The Court rejects this argument.

When a party objects to a Magistrate Judge's non-dispositive order, the Court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Under Eastern District of Michigan Local Rule 72.1(a)(2)(D) and 72.1(b)(1), a Magistrate Judge is authorized to "exercise general supervision of civil and criminal calendars" in conformance with "the general procedural rules of this court."

Plaintiff has not pointed to any part of the Magistrate Judge's orders granting Defendant

---

[9] Plaintiff also raises an argument premised on Dr. Dare's conclusion in a function report that Plaintiff was limited to sitting not more than two hours. Obj. at 5. Plaintiff contends that such a restriction precludes him from performing his past relevant work, because in his past jobs, he had to sit at meetings for more than two hours at a time. Id. The Court rejects this argument, for two reasons. First, the ALJ explained that he gave limited weight to Dr. Dare's opinion as to Plaintiff's sitting limitation, A.R. at 24, and Plaintiff does not object to the amount of weight assigned by the ALJ. Second, as explained above, even if Plaintiff is unable to work at his past actual jobs, he will be found not disabled if he remains capable of performing his past relevant work as it is generally performed in the national economy.

extensions of time to file a brief, and granting Defendant leave to file an oversize brief, that was clearly erroneous or contrary to law. It is established that the Federal Rules of Civil Procedure and the Eastern District of Michigan Local Rules authorize judges to grant extensions of time and page limit extensions. See Fed. R. Civ. P. 6(b) (authorizing courts to extend deadlines for parties to act); E.D. Mich. L.R. 7.1(d)(3) (authorizing parties to apply for a page limit extension on briefs). Plaintiff has pointed to no error in the Magistrate Judge's orders, and the Court perceives none. Further, Plaintiff's general argument that Defendant was given an "unfair advantage" is unconvincing; after all, Plaintiff filed two separate briefs on the docket, and the Magistrate Judge considered and addressed Plaintiff's arguments in both briefs. See R&R at 13-14.

For these reasons, the Court rejects Plaintiff's second objection.

### C.  Motion to Dismiss (Dkt. 28) and Miscellaneous Objections (Dkts. 17, 23)

Plaintiff also filed a motion to dismiss Defendant's summary judgment motion (Dkt. 28) and miscellaneous objections (Dkts. 17, 23); these documents assert the same challenges raised in Plaintiff's second objection to the Magistrate Judge's orders affording Defendant extensions of time and a page length extension. The Court has addressed, and rejected, these arguments in this Opinion. Accordingly, the Court denies the motion to dismiss (Dkt. 28) and overrules Plaintiff's miscellaneous objections (Dkts. 17, 23).

### IV.   CONCLUSION

For the reasons stated above, the Court accepts the recommendation contained in the R&R, overrules Plaintiff's objections to the R&R, denies Plaintiff's motion for summary judgment, grants Defendant's motion for summary judgment, denies Plaintiff's motion to dismiss, and overrules Plaintiff's miscellaneous objections.

SO ORDERED.

Dated: September 12, 2014
      Detroit, Michigan

s:\Mark A. Goldsmith
MARK A. GOLDSMITH
UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 12, 2014.

s/Johnetta M. Curry-Williams
JOHNETTA M. CURRY-WILLIAMS
Case Manager